<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ROCHAE QUARLES, | : |
| Plaintiff, | : Civ. No. 04-5746 (GEB) |
| v. | : **OPINION** |
| LOWE'S HOME CENTERS, INC., LOWE'S COMPANIES, INC., JAMES BLAIR and XYZ CORPORATION, | : |
| Defendants. | : |

**<u>BROWN, District Judge</u>**

This matter comes before the Court upon defendants Lowe's Home Centers, Inc. ("Lowe's") and James Blair's (collectively "Defendants") motion for summary judgment pursuant to Federal Rules of Civil Procedure Rule 56. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332. The Court, having considered the parties' submissions and decided the matter without oral argument pursuant to Federal Rules of Civil Procedure Rule 78, and for the reasons set forth below, will grant Defendants' motion.

**I.     BACKGROUND**

Defendant Lowe's is a retailer incorporated, and with its principal place of business located, in North Carolina. Plaintiff is a resident of New Jersey and a former employee of Lowe's. On March 4, 2003, Lowe's hired Plaintiff as a head cashier in its store located in Ocean Township, New Jersey. (Quarles Dep. at 20-21, 28.) Before starting work at the store, Plaintiff received training concerning Lowe's operational policies and procedures. (Quarles Dep. at 27-28, 56; McLane Cert. Ex. H.) During the time of the events alleged in the complaint, Defendant James Blair was a manager at the Ocean Township store. (*See* Blair Dep. at 6-7.)

1

As a head cashier, Plaintiff received what is known as an override card. (Quarles Dep. at 53-54.) Override cards are given to all head cashiers, as well as managers and assistant managers. (Quarles Dep. at 53-54; Ekin Dep. at 15-16; McLane Cert. Ex. J.) The cards allow their users to perform certain transactions that cashiers are otherwise not permitted to perform. (Quarles Dep. at 54; McLane Cert. Ex. J.) These transactions include, for example, changing a price for an improperly marked item and processing returns for merchandise exceeding a certain price. (Ekin Dep. at 16; Bunnell Dep. at 14-15.) For security reasons, Lowe's requires that each authorized override cardholder witness the transactions for which his or her card is being used to process. (Quarles Dep. at 66-67; Blair Dep. at 57-58; Ekin Dep. at 15.) Authorized cardholders are not permitted to give their cards to unauthorized employees to perform such transactions outside of their presence. (Quarles Dep. at 66-67; Blair Dep. at 57-58; Ekin Dep. at 15, 23-25.) Giving override cards to unauthorized employees to use without supervision constitutes a Class A violation pursuant to Lowe's store policies. (Blair Dep. at 41.) Class A violations include "the most serious misconduct" and "normally subject an employee to immediate termination on the first occurrence." (McLane Cert. Ex. K.)

On February 7, 2004, Tiffany Shumlich, a Loss Prevention Specialist at Lowe's, observed Plaintiff give her override card to a cashier to use without supervision. (Shumlich Cert. ¶¶2-3.) The incident was reported, and in a subsequent discussion with an assistant store manager, Plaintiff admitted that she had violated the store's policies. (Quarles Dep. at 75-78; Ekin Dep. at 19-21.) Defendant Mr. Blair was not in the store at the time. (Shumlich Cert. ¶5.) Plaintiff alleges that on or about the same day, she began informing her colleagues that she was pregnant. (Pl. Opp. Br. at 5.)

When Mr. Blair returned to the store on or about February 9, 2004, Ms. Shumlich informed him about Plaintiff's unauthorized use of her override card. (Blair Dep. at 32, 42-43; Shumlich Cert. ¶6.) She also showed Mr. Blair a videotape of the incident. (Blair Dep. at 32; Shumlich Cert. ¶6.) Mr. Blair called Lowe's Regional Human Resources Director Ken Zrowka

to determine the appropriate discipline for Plaintiff.  (Blair Dep. at 31; Zrowka ¶1.)  He left a message for Mr. Zrowka, and later that week, Mr. Zrowka returned his call and directed him to discharge Plaintiff in light of the seriousness of her violation.  (Blair Dep. at 46; Zrowka Cert. ¶3.)  Mr. Blair discharged Plaintiff on or about Friday, February 13.  (Quarles Dep. at 75; Blair Dep. at 47-48.)

While discussing the reasons for her discharge, Plaintiff admitted to Mr. Blair that she had lent her card in violation of the override card policy, but said that "practically all the managers" violated the policy.  (Quarles Dep. at 107; Blair Dep. at 48.)  Mr. Blair told Plaintiff that he would investigate her claim that other managers also violated the policy and told her to call the following Monday to see whether her termination would stand.  (Quarles Dep. at 106-07; Blair Dep. at 48-49.)

That weekend, Mr. Blair spoke with a number of assistant store managers concerning Plaintiff's claim that override card policy violations were common practice.  (Blair Dep. at 50-55.)  None of them confirmed Plaintiff's account.  (*Id.*)  During that period, Mr. Zrowka gave confirmation to Mr. Blair that Plaintiff should remain terminated.  (Blair Dep. at 53; Zrowka Cert. ¶4.)  At no time during Messrs. Blair and Zrowka's discussions did they know that Plaintiff was pregnant.  (Blair Dep. at 26-27; Zrowka Cert. ¶5.)  The Ocean Township store closed in or about late February, 2004.  (Quarles Dep. at 133.)

On August 26, 2004, Plaintiff filed a complaint against Defendants in the Superior Court of New Jersey in Monmouth County.  Plaintiff alleges that Defendants fired her because she was pregnant.  Plaintiff asserts a statutory claim based on the New Jersey Law Against Discrimination, N.J. Stat. Ann. §§ 10:5-1 to -4, and a common law claim of intentional infliction of emotional distress.  On November 19, 2004, Defendants removed the case to this Court pursuant to 28 U.S.C. §§ 1441 and 1446, based on the Court's diversity jurisdiction.

On December 8, 2005, Defendants filed the instant motion for summary judgment against Plaintiff with respect to both her statutory and common law claims.  For the reasons below, the

3

Court will grant Defendants' motion.

## II.  DISCUSSION

### A.  Standard of Review for a Motion for Summary Judgment

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1366 (3d Cir. 1996). The threshold inquiry is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In deciding whether triable issues of fact exist, the court must view the underlying facts and draw all reasonable inferences in favor of the non-moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Pennsylvania Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995); *Hancock Indus. v. Schaeffer*, 811 F.2d 225, 231 (3d Cir. 1987). The court must award summary judgment on all properly supported issues identified by the moving party, except those for which the non-moving party has provided evidence to show that a question of material fact remains. *See Celotex*, 477 U.S. at 324. In arguing against a motion for summary judgment, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

### B.  Plaintiff's New Jersey Law Against Discrimination Claim

Plaintiff alleges that Defendants fired her because she was pregnant, and claims that the their alleged conduct violated the New Jersey Law Against Discrimination ("LAD"). To determine claims of disparate treatment in violation of the LAD, New Jersey courts have adopted the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792

(1973). *Gerety v. Atl. City Hilton Casino Resort*, 184 N.J. 391, 399 (2005); *Viscik v. Fowler Equip. Co.*, 173 N.J. 1, 13-14 (2002). Pursuant to that framework, a plaintiff must first prove a *prima facie* case of discrimination. *Viscik*, 173 N.J. at 14. To do so in a discriminatory discharge case, "a plaintiff must prove that: (1) he was in the protected group; (2) he was performing his job at a level that met his employer's legitimate expectations; (3) he nevertheless was fired; and (4) the employer sought someone to perform the same work after he left." *Zive v. Stanley Roberts, Inc.*, 182 N.J. 436, 450 (2005).

If the plaintiff proves a *prima facie* case, the burden then shifts to the employer to prove a legitimate, non-discriminatory reason for the allegedly unlawful action. *Viscik*, 173 N.J. at 14. If the employer does so, the burden shifts back to the plaintiff to show that the employer's proffered reason was merely a pretext for discrimination. *Id.* "To prove pretext, however, a plaintiff must do more than simply show that the employer's reason was false; he or she must also demonstrate that the employer was motivated by discriminatory intent." *Id.* "Thus, under the *McDonnell Douglas* framework, a plaintiff retains the ultimate burden of persuasion at all times; only the burden of production shifts." *Id.*

Defendants argue that summary judgment should be entered against Plaintiff because: (1) she has failed to demonstrate a *prima facie* case of discrimination; and (2) even if she could do so, she fails to show that Defendants' legitimate and nondiscriminatory reason for her termination was a pretext for her discharge.

      **1.**     **Whether Plaintiff Can Establish a *Prima Facie* Case of Discrimination**

Plaintiff fails to establish a *prima facie* case of discrimination because she did not perform her job according to Defendants' legitimate expectations. As head cashier, she was issued an override card, which cards are given only to employees with managerial responsibilities because of security concerns. She admits that she gave her override card to an unauthorized employee to use without supervision, and that her conduct was in violation of store policy.

(Quarles Dep. at 75-78; Ekin Dep. at 19-21.) Notably, Plaintiff committed what Lowe's classifies as a Class A violation, and such violations normally subject employees to immediate termination. (Blair Dep. at 41; McLane Cert. Ex. K.)

### 2. Whether Plaintiff Can Establish That Defendants' Legitimate and Non-Discriminatory Reasons for Her Discharge Were a Pretext

Even if Plaintiff could establish a *prima facie* case, she would be unable to prove that she was discharged because she was pregnant, and that her violation of the override card policy was only a pretext. There is no evidence in the record showing that either Mr. Zrowka or Mr. Blair knew that Plaintiff was pregnant when they discussed her termination. In her brief, Plaintiff asserts that she had informed Mr. Blair of her pregnancy the same day that she was discharged, but she does not cite any evidence in the record to support that assertion. (Pl. Opp. Br. at 5.) Moreover, it is undisputed that Mr. Zrowka instructed Mr. Blair to discharge Plaintiff before she allegedly told Mr. Blair that she was pregnant. (Blair Dep. at 46; Zrowka Cert. ¶3.)

Plaintiff also argues that her violation of the override card policy was a pretext because permitting unauthorized individuals to use override cards without supervision was a common practice at Lowe's. The only support that she cites, however, are statements by Ms. Bafaty, a former employee at Lowe's, that unspecified individuals at Lowe's violated the override card policy at unspecified times. (Fitzgerald Cert. Ex. A.) Moreover, there is no genuine issue of material fact regarding whether, at the time that they decided to discharge Plaintiff, Messrs. Blair and Zrowka understood that it was a common and permitted practice to violate the override card policy. The record shows that they did not. (*See e.g.* Zrowka Cert. ¶4; Blair Dep. at 47-49.)

### C. Plaintiff's Intentional Infliction of Emotional Distress Claim
#### 1. Whether Plaintiff's Common Law Claim Is Preempted by the LAD

In addition to her LAD claim, Plaintiff also asserts a common law claim of intentional

6

infliction of emotional distress. That claim, however, is based on the same allegations supporting Plaintiff's LAD claim. To the extent that it does, Plaintiff is not entitled to relief because "supplementary common law causes of action may not go to the jury when a statutory remedy under the LAD exists." *Catalane v. Gilian Instrument Corp.*, 271 N.J. Super. 476, 492 (App. Div. 1994). According to the Appellate Division of the New Jersey Superior Court, "[o]ur Legislature has declared the remedies available under the LAD and would appear to have expressed the view that a common law claim for discrimination is unnecessary as the statute should be read broadly enough to encompass those claims and damages previously available at common law." *Id.*

### 2. Whether Plaintiff Can Satisfy the Elements of Her Common Law Claim

Moreover, Plaintiff has failed to show that she could satisfy the elements of her common law claim. To establish a claim for intentional infliction of emotional distress, a plaintiff must show that the defendants: (1) engaged in intentional conduct (2) that was extreme and outrageous (3) and was the proximate cause (4) of severe distress suffered by the plaintiff. *See Buckley v. Trenton Saving Fund Soc'y*, 111 N.J. 355, 366-67 (1988). "The courts have recognized the difficulty of establishing such a claim in an employment related dispute." *King v. Port Auth. of New York and New Jersey*, 909 F. Supp. 938, 943 (D.N.J. 1995). *See also Calkins v. Dollarland, Inc.*, 117 F. Supp. 2d 421, 432 (D.N.J. 2000) ("'it is extremely rare to find conduct in the employment context [that] will rise to the level of outrageousness necessary to provide a basis for recovery'") (quoting *Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir. 1988)); *Fregara v. Jet Aviation Bus. Jets*, 764 F. Supp. 940, 956 (D.N.J. 1991) (same); *Cautilli v. GAF Corp.*, 531 F. Supp. 71, 74 (E.D. Pa. 1982) ("we do not believe that [New Jersey] courts would extend this tort to cover an employment contract dispute").

Here, Defendants' conduct was not extreme and outrageous. Mr. Blair discussed with Plaintiff her violation of store policy and discharged her because of that violation. There is no

7

evidence showing extreme or outrageous conduct by Mr. Blair or any other employee of Lowe's.

### III. CONCLUSION

For the above reasons, Defendants' motion for summary judgment is granted. An appropriate form of order is filed herewith.


Dated: March 30, 2006

                                      s/ Garrett E. Brown, Jr.
                                 GARRETT E. BROWN, JR., U.S.D.J.